# The President's Authority to Remove the Chairman of the Consumer Product Safety Commission

The Chairman of the Consumer Product Safety Commission serves at the pleasure of the President and the President has the constitutional authority to remove her for any reason.

July 31, 2001

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion concerning the power of the President to remove the Chairman of the Consumer Product Safety Commission ("CPSC"). We conclude that the Chairman of the CPSC serves at the pleasure of the President, and that the President has the constitutional authority to remove her for any reason.

## I.

Section 2053 of title 15 of the U.S. Code provides that the CPSC shall consist of "five Commissioners who shall be appointed by the President, by and with the advice and consent of the Senate." 15 U.S.C. § 2053(a). The President shall appoint a Chairman from among the members of the Commission, by and with the advice of the Senate, *id*. § 2053(a), and the members of the Commission annually elect a Vice Chairman to act in case of a vacancy in the office of the Chairman, *id*. § 2053(d). Members of the Commission serve seven-year terms. *Id*. § 2053(b)(1). The President may remove "[a]ny member of the Commission" for "neglect of duty or malfeasance in office but for no other cause." *Id*. § 2053(a).

The current Chairman of the Commission, Ann Brown, sworn in on March 10, 1994, serves as both a member of the Commission and its seventh Chairman. In June 1999, President Clinton nominated Brown to her second term, which expires in October 2006. The Commission's other members include Mary Sheila Gall, who was nominated by President Bush in July 1991 and renominated by President Clinton in May 1999. Her current term expires in October 2005. Thomas Hill More was nominated by President Clinton to complete a term that expired in October 1996. In August 1996, he was confirmed for his current full term, which expires in October 2003. According to the Commission's Office of Public Affairs, the Commission elected More to a one-year term as Vice Chairman in June 2001. The other two positions on the Commission are currently vacant.

## II.

The President's ability to remove subordinates is one of his most important constitutional powers. As head of the Executive Branch, the President has the duty

to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. In order to fulfill this responsibility, the Chief Executive must be able to supervise subordinate officials and to coordinate Executive Branch policies and positions. *See generally Myers v. United States*, 272 U.S. 52 (1926). The power to remove is the power to control. As a result, the Supreme Court and the Executive Branch[1] have consistently recognized that the Constitution restricts congressional efforts to limit the President's removal authority, so as to preserve the President's ability to enforce the laws. *Morrison v. Olson*, 487 U.S. 654, 690-91 (1988). As reflected in the great debate over removal in the very first Congress, the Framers rejected a legislative role in removal in favor of plenary presidential power over officers appointed by the President with the advice and consent of the Senate. *See Bowsher v. Synar*, 478 U.S. 714, 723-24 (1986); *Myers*, 272 U.S. at 111-44. Indeed, the power to remove should be seen as a necessary component of the vesting of all of the federal executive power in one President in Article II, Section 1 of the Constitution.

To be sure, the Court has refused to invalidate all limitations on presidential authority over all Executive Branch officials. In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court upheld a for-cause removal provision over members of the Federal Trade Commission due to the Commission's "quasi-legislative or quasi-judicial" functions. *Id.* at 628. In *Wiener v. United States*, 357 U.S. 349 (1958), the Court inferred the existence of a for-cause limitation on removal, but again because the official in question, a member of the War Claims Commission, performed a quasi-judicial function. Most recently, in *Morrison v. Olson*, the Court upheld a for-cause removal provision for an independent counsel who performed investigatory and prosecutorial functions. The Court allowed a limitation on removal, however, only because the inferior officer involved performed a narrow, sharply limited, and highly unusual role that addressed the difficult issue of investigating the conduct of high-ranking Executive Branch officials. The *Morrison* Court further found that the limitation on the removal power did not unconstitutionally infringe on the President's Article II powers, due to the Attorney General's continuing ability to control and supervise the independent counsel.

In light of these cases, it is clear that the Constitution generally reserves to the President alone the power to remove officials within the Executive Branch, subject to certain narrow exceptions. Even the congressional efforts that were upheld in *Humphrey's Executor*, *Wiener*, and *Morrison* were recognized by the Court as raising serious constitutional problems due to the possible infringement of the President's powers under Article II of the Constitution. At a minimum, therefore,

---

[1] *See The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 166-70 (1996); *Common Legislative Encroachments on Executive Branch Authority*, 13 Op. O.L.C. 248, 252-53 (1989).

this Office believes that Congress must state explicitly its intention to challenge the President's authority to remove subordinate officials. Indeed, unless Congress signals a clear intention otherwise, a statute should be read to preserve the President's removal power, so as to avoid any potential constitutional problems. *Cf. Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989) (construing statute to avoid unconstitutional infringement on executive powers); *Ass'n of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 906-11 (D.C. Cir. 1993) (same).

Here, the statute establishing the CPSC does not include any limitation on the President's power to remove the Chairman. In the absence of such a provision, the statute is best read as not interfering with the President's plenary power to remove Executive Branch officials. Constitutional problems would arise if such a provision were to be implied; even section 2053(a)'s for-cause removal provision for Commissioners itself could prove to be unconstitutional. For example, none of the factors that led the *Morrison* Court to uphold the independent counsel law—that the independent counsel was an inferior officer, that her jurisdiction and powers were narrowly limited, and that the Attorney General still had supervisory authority over the independent counsel—is present here. In order to avoid the difficult constitutional questions that would arise concerning the President's Article II powers, section 2053 must be interpreted as creating no restrictions on the President's ability to remove the CPSC Chairman.

One might argue that *Wiener*—the sole Supreme Court case inferring a for-cause provision in the face of statutory silence—suggests a different outcome. It is clear, however, that the *Wiener* Court believed such protections necessary because the official in question performed purely adjudicatory duties affecting the rights of private individuals. 357 U.S. at 354-56. The CPSC's powers do not remotely approach the discrete dispute-resolution functions of *Wiener*'s War Claims Commission, which heard claims by Americans who suffered personal injury or property damage at the hands of the enemy during World War II. Instead, the CPSC's main responsibilities include conducting research and collecting data on product safety, 15 U.S.C. § 2054, promulgating product safety regulations, *id.* § 2056, banning hazardous products, *id.* § 2057, and the right to bring civil suits in federal court, *id.* § 2071. The CPSC has no adjudicatory functions, certainly none that resembles the pure claims-settlement role of the War Claims Commission.[2]

Conversely, the War Claims Commission had no rulemaking or law-enforcement functions like those of the CPSC. Indeed, the CPSC more closely resembles the structure of the FTC, whose for-cause removal provision was upheld

---

[2] While the CPSC has issued regulations that discuss its "adjudicative proceedings," *see* 16 C.F.R. § 1025.1, these rules appear to apply to hearings that the Commission conducts in connection with the exercise of its regulatory duties, rather than the adjudication of private rights similar to that performed by courts. In fact, private parties who suffer harm from CPSC rules, and suits by those injured by noncompliant products, must file lawsuits directly in federal court. *See* 15 U.S.C. §§ 2060(a), 2072, 2073.

in *Humphrey's Executor*. Even then, however, the Court required an explicit provision restricting the President's removal authority, which is not present here. No for-cause removal protection for the CPSC Chairman can be inferred from the CPSC's statutory duties.[3]

The Chairman's specific functions further reinforce this interpretation. The CPSC's statute provides that the Chairman "shall be the principal executive officer of the Commission, and he shall exercise all of the executive and administrative functions of the Commission." *Id*. § 2053(f)(1). Thus, by statute, the Chairman is differentiated from those of the other Commissioners solely by her executive duties. The *Wiener* Court's willingness to infer a limit on the President's removal power, therefore, would be even less appropriate here. The purely executive functions of the Chairman qua Chairman also help explain why Congress would intend different conditions for the removal of the Chairman as opposed to removal of the Commissioners generally.

## III.

This reading is further bolstered by other parts of the CPSC's statutory text. Section 2053(a) seeks to limit the President's authority to remove Commission members by establishing a for-cause requirement. Under standard canons of statutory construction, the inclusion of a provision in one part of a statute, and its absence in another part, indicates that the first provision does not apply in the latter context. *See, e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 326-30 (1997) (applying canon of *expressio unius*); *Cipollone v. Liggett Group, Inc*., 515 U.S. 504, 517 (1992) (same). Specification of grounds for the removal of a Commission member, and the failure to address the removal of the Chairman, demonstrate Congress's intention not to limit the President's removal powers over the Chairman. The Chairman serves at the pleasure of the President.

Legislative history further confirms this reading of the text. In 1978, Congress amended the law establishing the CPSC to make clear that the Chairman served at the pleasure of the President. As originally enacted in 1972, the Consumer Product Safety Act had stated that:

> An independent regulatory commission is hereby established, to be known as the Consumer Product Safety Commission, consisting of five Commissioners who shall be appointed by the President, by and with the advice and consent of the Senate, one of whom shall be designated by the President as Chairman. The Chairman, when so des-

---

[3] In other contexts, this Office has questioned whether *Wiener*'s rationale makes sense and whether the case remains good law. *See The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. at 168 n.115.

> ignated shall act as Chairman until the expiration of his term of office as Commissioner. Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause.

Pub. L. No. 92-573, § 4(a), 86 Stat. 1207, 1210 (1972) (emphasis added). It was thought that this provision did not make clear whether the Chairman served at the pleasure of the President, or whether he held the chairmanship as long as his term as a Commissioner. One might construe the Act as requiring that in order to remove a Chairman, the President would have to remove him as a Commissioner as well. Because the statute limited the removal of commissioners, the original version of the Act thus might have been understood as limiting the President's removal power over the Chairman.

In amending the statute in 1978, Congress clarified the CPSC removal provisions. While Congress decided to subject the selection of the Chairman to senatorial advice and consent, it also made clear that the Chairman served at the pleasure of the President. The statutory language was changed to:

> An independent regulatory commission is hereby established, to be known as the Consumer Product Safety Commission, consisting of five Commissioners who shall be appointed by the President, by and with the advice and consent of the Senate. The Chairman shall be appointed by the President, by and with the advice and consent of the Senate, from among the Members of the Commission. An individual may be appointed as a member of the Commission and as Chairman at the same time. Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause.

Pub. L. No. 95-631, § 2(a), 92 Stat. 3742, 3742 (1978) (emphasis added). The statute removed the provision that had tied the term of the chairmanship to the term of the commissioner appointed to the post. This had the additional effect of delinking the conditions of the Chairman's removal, if there had been any, from the conditions under which the President could remove Commissioners.[4]

Congress fully appreciated the importance of the new language. In its report on the 1978 Act, the Senate Commerce Committee observed that this change made clear that the "chairman of the agency shall serve at the pleasure of the President."

---

[4] The 1990 amendments to the Act added the following sentence: "In making such appointments, the President shall consider individuals who, by reason of their background and expertise in areas related to consumer products and protection of the public from risks to safety, are qualified to serve as members of the Commission." Pub. L. No. 101-608, § 102, 104 Stat. 3110, 3110 (1990). This part of section 2053(a) is not involved in this matter.

S. Rep. No. 95-889, at 10 (1978). In introducing the bill on the floor, Senator Ford declared that "[t]his legislation amends the act to provide that the Commission Chairman serve at the pleasure of the President with the advice and consent of the Senate." 124 Cong. Rec. 24,362 (1978). In introducing the House version, Representative Eckhardt stated that the legislation "would provide that the Chairman of the Commission serve at the pleasure of the President and be appointed with the advice and consent of the Senate." 124 Cong. Rec. 38,620 (1978). In agreeing to the House version, which contained the same language on removal as the Senate's bill, Senator Ford told the Senate that the legislation continued to provide "that the Chairman of the Commission serve at the pleasure of the President with Senate advice and consent." 124 Cong. Rec. 37,646 (1978). It seems clear that Senator Ford's references to the Senate's advice and consent role relate to the appointment of the Chairman (as it is settled that the Senate cannot condition removal of executive officials on its own advice and consent), while his discussion of the service of the Chairman at the pleasure of the President refers to removal. The Senate Report and Representative Eckhardt's description of the 1978 amendments made clear the new change: that the appointment of the Chairman would require the Senate's advice and consent, but that otherwise he would serve at the pleasure of the President.

## IV.

We conclude that the President has the authority to remove the Chairman of the CPSC for any reason. Upon her removal, she will still continue to serve as a Commissioner. Under 15 U.S.C. § 2053(d), the Vice Chairman of the Commission will assume the post of Chairman.

JOHN C. YOO
*Deputy Assistant Attorney General*
*Office of Legal Counsel*